# United States District Court

## NORTHERN DISTRICT OF TEXAS

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 15 2011

CLERK, U.S. DISTRICT COURT
by _____A_____
    Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL COMPLAINT |
| V. | CASE NUMBER: 3-11-MJ- 59D-BF |
| SAMUEL GEORGE HURD, III | |

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief, that on or about July 2011, the exact date being unknown, and continuing to on or about December 14, 2011, in the Dallas Division of the Northern District of Texas, and elsewhere, the defendant did,

knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together, and with other persons known and unknown, to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a controlled substance,

in violation of Title 21 United States Code, Section(s) 841(a)(1), (b)(1)(B)(ii)(II); and 846.

I further state that I am a(n) Special Agent of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI) and that this complaint is based on the following facts:

See attached Affidavit of Special Agent George Ramirez, HSI, which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:  X Yes

_____
Signature of Complainant
GEORGE RAMIREZ
SPECIAL AGENT, HSI

Sworn to before me and subscribed in my presence, on this _____ day of December, 2011, at Dallas, Texas.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE           _____
Name & Title of Judicial Officer                        Signature of Judicial Officer

## AFFIDAVIT

### I. INTRODUCTION

I, George Ramirez, Special Agent ("SA") of the U.S. Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI), in Irving, Texas, hereinafter referred to as affiant, being duly sworn, do depose and state the following:

I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States, who is authorized by law to conduct investigations of, and make arrests for, numerous federal criminal offenses, including various drug offenses in violation of Title 21 of the United States Code.

I am a SA with the U.S. Department of Homeland Security, HSI and have been so employed for more than 27 years. During my law enforcement career I have participated in the investigations of a variety of criminal offenses, including, complex drug organizations, human smuggling/trafficking organizations, domestic/international terrorism, wire fraud, and financial crimes. I have often acted in an undercover capacity in human smuggling, fraud, and narcotics investigations. I have also participated in all of the traditional methods of investigations, including, but not limited to, electronic surveillance, physical surveillance, witness and subject interviews, the use of search warrants, the use of confidential informants, the use of pen registers, and the use of undercover agents. In the course of such investigations, I have made numerous arrests.

Through training and participation in a multitude of criminal investigations, I have been the affiant in numerous affidavits in support of criminal complaints and search warrants. I have supervised the activities of informants who have provided information and assistance resulting in federal prosecution of criminal offenders. I have also acted in and supervised numerous domestic and international undercover operations on behalf of HSI. The facts and circumstances establishing probable cause are either personally known to me, or they were relayed to me by HSI agents or other law enforcement officers who have personal knowledge of them. Accordingly, I believe that there is probable cause that Samuel George Hurd, III ("HURD") has violated 21 U.S.C. § 846, in that beginning on or about July 2011, the exact date being unknown, and continuing to on or about December 14, 2011, in the Dallas Division of the Northern District of Texas ("NDTX"), and elsewhere, he did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together, and with other persons known and unknown, to possess with the intent to distribute 500 grams or more of a mixture or substance containing a

detectable amount of cocaine, a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II).

## II. FACTS AND CIRCUMSTANCES

On July 27, 2011, the HSI Office of the Special Agent in Charge ("SAC), Dallas, Texas, received information from a confidential informant (the "CI"), who has proven to be reliable, that a subject later identified as T.L., a known HURD co-conspirator, was attempting to coordinate the purchase of approximately four kilograms of cocaine for an unknown buyer, later identified as HURD. T.L. further stated the buyer wanted to complete the purchase of the cocaine at an early hour as the buyer would be transporting the cocaine to a northern destination that same day.

The CI, at the direction of HSI agents, coordinated a meet with T.L. for the purchase of the cocaine, after which T.L. was located at or near the intersection of the intended meet in Dallas, Texas, which is in the Dallas Division of the NDTX. HSI agents subsequently coordinated with the Dallas County Constable who conducted a routine traffic stop of the vehicle being driven by T.L. in Dallas. A subsequent consensual search of the vehicle revealed a white in color canvas bag, covered in a green leafy plant like material that field tested positive for the properties of marijuana. This bag contained $88,000 in United States currency ("USC").

T.L. abandoned all interest in the currency and stated that the currency belonged to HURD, the owner of the vehicle. T.L. stated that he has known HURD for a considerable time and conducts all vehicle maintenance on HURD's vehicles from a vehicle repair shop in Coppell, Texas. T.L. identified HURD as a player for the Dallas Cowboys, and T.L. said that HURD routinely leaves large amounts of currency in his vehicles. (At the time, HURD was a wide receiver for the Dallas Cowboys, but he was later traded to the Chicago Bears.) A vehicle registration check for the vehicle that T.L. was driving showed that it was registered to HURD at an Irving, Texas address. A search of the temporary call list of T.L.'s cellular telephone revealed several calls to and from the later identified cellular telephone of HURD, leading up to and after the traffic stop. The currency was subsequently seized. T.L. and the vehicle were released without incident.

HURD subsequently attempted to make contact with HSI agents utilizing T.L.'s telephone, as well as his personal telephone number that had previously been identified on T.L.'s cellular telephone call list. HURD identified himself by name and stated that he was a Dallas Cowboy. HURD stated that he was the owner of the $88,000.00 USC seized from T.L.

On July 28, 2011, HSI agents conducted a consensual interview of HURD at the HSI Dallas office. HURD reiterated that the currency seized from T.L. belonged to him. HURD claimed to have conducted a withdrawal and wire transfer of funds from a personal bank account on July 25, 2011. HURD further claimed that on July 26, 2011, he had personally packed and placed the $88,000, along with assorted bags and items, into his vehicle. HURD stated that later that evening he had turned over his vehicle to T.L. for maintenance and detailing. HURD subsequently provided HSI agents with a bank statement that reflected withdrawals. However, a review of this statement revealed that they did not reflect the transactions and amounts claimed by HURD.

On August 14, 2011, T.L. negotiated with the CI for approximately five kilograms of cocaine on behalf of HURD. T.L. identified HURD to the CI as a player in the National Football League ("NFL"), who was currently out of town and still attempting to reclaim the seized $88,000 USC. T.L. stated that the deal could be completed afterhours at a Firestone shop where he worked and to which he held the keys.

On August 15, 2011, HSI received additional information from the Denton Police Department in Denton, Texas, that HURD was possibly associated to four individuals from California that were detained on July 25, 2011, with currency, narcotics, and weapons. A search of the text messages on the cellular telephones revealed electronic communications with the detainees and a telephone number identified as being utilized by HURD and T.L. The text message content appeared to be consistent with narcotics trafficking and possible money laundering.

On September 9, 2011, T.L. telephonically contacted the CI and advised that his associates from Chicago, Illinois, traveled to the Dallas area and were interested in purchasing five kilograms of cocaine. T.L. stated that the buyer had $50,000 and requested that the CI "front" – meaning to advance with the understanding of later payment – the buyer a kilogram of cocaine. T.L. stated that the buyer (HURD) was the same person previously mentioned that now played for the Chicago Bears, and that HURD wanted to meet with the CI. T.L. subsequently advised the CI that HURD was unavailable due to NFL obligations, but that HURD's cousins were available to complete the transaction. T.L. agreed to email the CI a picture of the money; however, the picture was never received.

On December 5, 2011, T.L. and the CI conversed telephonically and T.L. advised that the CI and HURD needed to meet to discuss future business.

On December 6, 2011, the CI met with T.L. at the Firestone Auto Care in Coppell, Texas. T.L. advised that the buyer previously discussed, who played for the

Chicago Bears, was named "Sam" (HURD) and that HURD wanted to meet with the CI. T.L. then contacted HURD telephonically and passed the telephone to the CI. During the conversation, HURD stated that he was sending associates to the Dallas area and was initially interested in purchasing three kilograms of cocaine before stating that he wanted five kilograms of cocaine. HURD further stated that he would advise T.L. to provide the CI his telephone number so that they could meet should the CI travel to the Chicago area. The call with HURD then ended.

T.L. subsequently reiterated that the narcotics transaction could be completed at the Firestone shop and T.L. proceeded to show the CI the shop and explained in detail the manner in which the illicit transaction could be conducted there. T.L. further stated that HURD makes about $4,000,000 a year from the Chicago Bears and that HURD would have the money ready. T.L. further claimed that HURD had a previous narcotics connection that would supply HURD narcotics valued at approximately $100,000 to $200,000 weekly.

On December 7, 2011, T.L. provided the CI with HURD's contact telephone number.

On December 8, 2011, the CI telephonically contacted HURD at the number that T.L. provided. The CI advised HURD that the five kilograms of cocaine that HURD wanted to purchase were not going to be available. HURD stated that he had already been prepared to request an additional week and that he was interested in setting up continued business with the CI and his associates. The CI advised HURD that he/she would be in the Chicago area in the coming weeks, after which HURD stated that he would be interested in meeting to negotiate prices, discuss quantities, and establish a long-term business relationship.

On December 14, 2011, at approximately 7:40 p.m., HURD met with a HSI undercover agent ("UCA") and the CI at a restaurant located on West Bryn Mawr Avenue in Chicago. HURD introduced himself as the "Sam" that had been communicating with the CI. HURD stated that T.L. had placed him in contact with the CI. HURD stated that he was interested in purchasing five to ten kilograms of cocaine and 1,000 pounds of marijuana per week for distribution in the Chicago area. HURD negotiated to receive the aforementioned amounts of narcotics at $25,000 per kilogram of cocaine and $450 per pound of marijuana. HURD further stated that he and another co-conspirator currently distribute approximately four kilograms of cocaine per week in the Chicago area, but that the supplier could not supply him with enough quantity. HURD further stated that his co-conspirator is in charge of doing the majority of the deals as HURD focuses on the "higher-end" deals. HURD subsequently inquired if the UCA and the CI could provide him with Mexican cellular telephones, as HURD believed that law

enforcement did not have the capability of "listening" to Mexican telephones. HURD stated that he had lost some money in Dallas that had been seized from T.L., but that the seizure of the currency could not be associated to him. After they finished negotiating, the UCA presented HURD with a kilogram of cocaine that HURD accepted. HURD stated that he plays for the Chicago Bears and that he gets out of practice at approximately 5:30 p.m., after which he would make arrangements to make payment for the kilogram of cocaine. HURD subsequently departed and exited the restaurant with the bag containing the kilogram of cocaine. HURD placed the bag containing the kilogram of cocaine into his vehicle, after which law enforcement placed HURD under arrest.

### III. CONCLUSION

In conclusion, I believe that there is probable cause that HURD has violated 21 U.S.C. § 846, in that beginning on or about July 2011, the exact date being unknown, and continuing to on or about December 14, 2011, in the Dallas Division of the NDTX, and elsewhere, he did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree together, and with other persons known and unknown, to possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a controlled substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(ii)(II).

GEORGE RAMIREZ
SPECIAL AGENT, HSI

SWORN TO AND SUBSCRIBED BEFORE ME, on this ___ day of December 2011, at Dallas, Texas.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE
Northern District of Texas